# In the United States Court of Federal Claims

No. 25-742
Filed: September 11, 2025

---

**MICHAEL JEROME HARVEY and
MICHELE NICOLE WEST-HARVEY,**

            *Plaintiffs,*

**v.**

**THE UNITED STATES,**

            *Defendant.*

---

*Michael Jerome Harvey* and *Michele Nicole West-Harvey*, Minneapolis, M.N., Pro Se.

*Michael T. Collins*, Attorney of Record, Tax Division, with *Jason Bergmann*, Assistant Chief Court of Federal Claims Section, U.S. Department of Justice, Washington, D.C., for Defendant.

### ORDER GRANTING IN FORMA PAUPERIS PETITION; MEMORANDUM OPINION AND ORDER DISMISSING; AND ORDER IMPOSING RULE 11 SANCTIONS[1]

**TAPP, Judge.**

　　Pro Se Plaintiffs, Michael Jerome Harvey and Michele Nicole West-Harvey, ("the Harveys"), seek the "immediate release" of a purported $1,454,859.00 tax refund, along with $250,000.00 in compensatory damages, $500,000.00 in punitive damages, and a statutory interest award of "no less than" $116,388.72—collectively $2,321,247.72.[2] (Compl. at 23:23,

---

[1] While the Harveys have not previously filed in this Court, Plaintiff Michael Harvey has filed two complaints in the District of Minnesota: Case Nos. 24-1173 (dismissed for failure to state a claim and perfect service) and 25-1073 (dismissed as frivolous).

[2] The Harveys identify themselves as representatives of their "personal estate trusts," namely "The Michael Jerome Harvey Trust" and "The Michele Nicole Harvey Trust," and affix copyright and trademark symbols to their names. (*See* Compl., ECF No. 1). These practices are commonly associated with the sovereign citizen movement. *See Wood v. United States*, 161 Fed. Cl. 30, 34–35 (2022); *Potter v. United States*, 161 Fed. Cl. 24, 28–29 (2022).

24:1–13, ECF No. 1).[3] The Harveys also seek a declaratory judgment acknowledging that their tax returns were properly filed through a "valid hybrid accounting method pursuant to [Internal Revenue Service's ("IRS")] regulations," and that the agency's failure to process their refund constitutes both a constructive denial and an uncompensated taking under the Fifth Amendment. (*Id.* at 24:14–26, 25:1–17). In lieu of pre-paying a filing fee, the Harveys request to proceed *in forma pauperis* ("IFP Application"), (ECF No. 2). That motion is **GRANTED**.

The United States moves to dismiss the Harveys' Complaint under the Rules of the United States Court of Federal Claims ("RCFC") 12(b)(1) and 12(b)(6). (Def.'s Mot., ECF No. 6). The United States argues that the Harveys failed to pay a remaining tax underpayment balance of $447.00, that their unsigned Form 1040—submitted in support of their refund claim— was not "duly filed" within the meaning of I.R.C. § 7422(a), and that the Harveys' remaining claims fall outside the scope of the Court's jurisdiction. (Def.'s Mot. at 4–10). The Court **GRANTS** the United States' Motion. In addition, given the Harveys' recent filing of a violent, graphic, and improper document entitled as a "motion," the Court, alternatively imposes a **SANCTION** pursuant to RCFC 11.

## I.    Background[4]

The Harveys' claim stems from the joint Form 1040 Individual Income Tax Return the Harveys filed for the 2023 tax year, which included a reported $141,616.00 in federal income tax withheld from W-2 wages totaling $157,794.00, and an additional $1,329,868.00 in estimated tax payments they attribute to their respective "trusts." (Compl. at 5:8; Pls.' Exhibits ("Exs.") at 17– 18, ECF No. 1-3).[5] This purportedly led to tax payments totaling $1,471,484 by the Harveys. (*Id.*). After subtracting their self-assessed tax liability of $16,625.00, the Harveys claimed a refundable credit of $1,454,859.00. (*Id.* at 18).

The Harveys allege that, along with their jointly filed Form 1040, they submitted a hybrid form of payment including "[Committee on Uniform Security Identification Procedures

---

[3] Because the Harveys' submissions are not clearly paginated, citations throughout the Opinion refer to the page number assigned by CM/ECF and line numbers within the text, respectively.

[4] In considering the pending Motion to Dismiss, the Court assumes the facts alleged in the Complaint to be true. *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017). This summary of the facts does not constitute findings of fact but is simply a recitation of the allegations.

[5] The Harveys' Exhibits were filed as one document and were neither labeled nor paginated. (*See generally* Pls. Exhibits ("Exs."), ECF No. 1-3). Therefore, citations to their Exhibits throughout the Opinion refer to the page number assigned by CM/ECF.

Additionally. the Harveys allege that they filed their Form 1040 on April 2, 2024. (*See* Compl. 5:9–13). The Court notes, the referenced Form 1040 lacks a signature or date. (*See* Exs. at 17– 18).

("CUSIP")]-verified promissory notes, 1099-OID reports, Forms 8300 and 8281, and verifiable Bloomberg terminal documentation showing the value and trading eligibility of each submitted asset." (Compl. at 5:21–23).[6] According to the Harveys, the IRS received and accepted their payment methods without objection. (*Id.* at 8:4–9:20). Subsequently, the Harveys assert they claimed a refund for $1,571,248.00.[7] (Pls.' Exs. at 15 (Form 843 (Claim for Refund and Request for Abatement)).

The following year, the Harveys purport that the IRS issued a notice indicating an overpayment and entitlement to a refund, ("the Notice"). (Compl. at 11:21–24). The Harveys assert that, within the Notice, the IRS revised their 2023 Form 1040 to reflect a refund entitlement of $133,062.51—an amount representing less than ten percent of the refund claimed in their Complaint. (Pls.' Exs. at 62).[8] Following receipt of the Notice, the Harveys allege that they engaged in multiple phone conversations with IRS representatives who "recommended" they file an amended return and that their refund remained under review.[9] (Compl. at 12:3-5; 12:9–20). The Harveys purport that the IRS eventually informed them that their return "had not been denied," but "was pending further internal processing," and no letter of disallowance would be sent.  (*Id.* at 12:15–18).

The Harveys filed this action, contending that the IRS has neither reimbursed them nor provided a formal letter of disallowance rejecting the hybrid form of payment used in their 2023 income tax return. (Compl. at 12:22–25). According to the Harveys, the IRS acknowledged their overpayment for more than 520 days, thereby "exceeding the 45-day statutory deadline for refund issuance under I.R.C. § 6611(e)." (*Id.* at 7:3). The Harveys further allege that the IRS's delay is "intentional and systematic." (*Id.* at 7:5). The Harveys err.

## II.    Discussion

The United States moves to dismiss the Harveys' claims for lack of subject matter jurisdiction under RCFC 12(b)(1). (Def.'s Mot. 4–6). Specifically, the United States argues that

---

[6] *See* IRS, *About Form 1099-OID*, https://www.irs.gov/forms-pubs/about-form-1099-oid (last visited July 3, 2025) (explaining that a Form 1099-OID reports taxable original issue discount income on debt instruments).

[7] The Court notes the amount claimed does not match the Harveys' Form 1040, and that discrepancy is unexplained. (*Compare* Pls.' Exs. at 17–18 (claiming an entitlement of $1,454,859.00), *with* Pls.' Exs. at 15 (claiming a refund in the amount of $1,571,248.00)).

[8] Importantly, the second page of the Notice has a section titled "Payments credited to your account for 2023[.]" (Pls.' Exs. at 63). Underneath that section, the IRS included the following statement: "Our Records show that you didn't make estimated tax payments." (*Id.*).

[9] Despite reporting multiple alleged conversations with IRS agents, the Harveys failed to identify any personnel they spoke with, nor do they provide any phone records to substantiate their claims.

the Harveys failed to pay their full tax liability, thereby depriving this Court of jurisdiction. (*Id.* at 4–6). The United States also argues that the Harveys failed to state a claim because they failed to adhere to the prerequisites established in § 7422(a) for duly filing an administrative claim. (*Id.* at 6–8). The United States maintain that the Harveys have pleaded "no other cognizable claim." (*Id*. at 8–10). The Court finds that the Harveys have not presented any claims over which it may properly exercise jurisdiction.

A plaintiff "has the burden of establishing jurisdiction by a preponderance of the evidence." *Fid. & Guar. Ins. Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015). Pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, "[t]his latitude . . . does not relieve a pro se plaintiff from meeting jurisdictional requirements." *Bernard v. United States*, 59 Fed. Cl. 497, 499 (2004), *aff'd*, 98 F. App'x 860 (Fed. Cir. 2004). When deciding whether to dismiss a complaint, "this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor." *Wall v. United States*, 141 Fed. Cl. 585, 592 (2019) (citing *Erickson, v. Pardus*, 551 U.S. 89, 94 (2007)).

To establish subject matter jurisdiction under RCFC 12(b)(1), a plaintiff must identify and plead a separate source of money-mandating law that creates a substantive right to monetary relief. *Starr Int'l Co. v. United States*, 856 F.3d 953, 980 (Fed. Cir. 2017). The Tucker Act gives this Court subject matter jurisdiction over tax refund suits so long as certain prerequisites are met. *See United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008). First, the plaintiff must pay the principal tax deficiency in full. 26 U.S.C. § 6511(a) (imposing statute of limitations from when tax was *paid*); *see Diamond v. United States*, 603 Fed. Appx. 947, 950 (Fed. Cir. 2015). "Second, the plaintiff must duly file a tax refund claim with the IRS." *Estate of Armitage v. United States*, 176 Fed. Cl. 199, 203 (2025) (citing 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary [of the Treasury.]")); *see also Shore v. United States*, 9 F.3d 1524, 1526–27 (Fed. Cir. 1993) (discussing how the principal tax deficiency must be paid in full or the claims will be dismissed). If the plaintiff fails to satisfy these requirements, this Court lacks jurisdiction to hear their tax refund claims. *See Estate of Armitage*, 176 Fed. Cl. at 203 (citing *Clintwood Elkhorn*, 553 U.S. at 4). The Court will address each prong in turn.

First, the Harveys must pay the disputed tax in full for this Court to have jurisdiction over a Tucker Act tax claim. *See* 26 U.S.C. § 6511(a); *see Shore*, 9 F.3d at 1526. The Harveys' Complaint includes a Form 1040 showing $16,625 in self-assessed liability. (*See* Pls.' Exs. at 18). Unfortunately, the Harveys failed to provide receipts, checks, bank withdrawals, or any other evidence from which the Court could determine that the Harveys paid their self-assessed tax obligation to the IRS. (*See generally* Pls.' Exs.). The Harveys assert they utilized "financial instruments" including "CUSIP-verified promissory notes, 1099-OID reports, Forms 8300 and 8281, and verifiable Bloomberg terminal documentation" to satisfy their tax obligations. (Compl. at 8:4–14). The United States argues these payment methods are invalid. (Def's. Mot. at 4–6).

On a motion to dismiss the Court "must accept as true the allegations in the complaint." *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011). However, if the government challenges a plaintiff's allegations of jurisdiction in a motion to dismiss under RCFC 12(b)(1), only those factual allegations that the government does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Rsrv. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). "[T]he Court of Federal Claims "may consider relevant evidence in order to resolve the factual dispute*.'" Freeman v. United States*, 875 F.3d 623, 627 (2017) (quoting *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014)).

Generally, the Court agrees with the United States.[10] *See Williams v. United States*, 112 Fed. Cl. 67, 77 (2013) ("A Form 1099-OID cannot be used to establish tax payment, as that form is used solely to report original issue discount income and related withholding."); *Montagne v. United States*, 90 Fed. Cl. 41, 48 (2009) (promissory notes not drawn from legitimate and identifiable financial institutions not recognized as valid payment for tax obligations). However, in support of their claims, the Harveys submitted the Notice as proof of the IRS's confirmation that the Harveys are entitlement to a refund of $133,062.51. (Pls.' Exs. at 62). In opposition, the United States attaches IRS Wage and Income Transcripts ("the Transcripts") indicating that the Harveys' total federal withholdings for the 2023 tax year amounted to $16,178.00. (*See* Def.'s Exs. 1, 2, ECF Nos. 6-1, 6-2). The United States also asserts that per the Harveys' own calculations, they were required to pay $16,625.00 in taxes, which would still leave a balance due of $447.00. (Def.'s Mot. at 4; *see also* Pls.' Exs. at 18).

While the Court agrees that the Harveys have a jurisdictional prerequisite to pay their full tax liability, *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002), neither Party has explained the relationship between the Notice indicating a refund due of $133,062.51, and the Transcripts provided by the United States. In fact, the United States does not even seem to question the legitimacy of the Notice. Nonetheless, because there are alternative grounds on which the Court may properly dismiss this case, as discussed below, engaging in this factual examination is unnecessary.

The United States also argues that the Harveys failed to "duly file" an administrative claim for refund with the IRS within the meaning of I.R.C. § 7422(a) because their Form 1040 was unsigned. (Def.'s Mot. at 6). The Court agrees.

Section 7422(a) states that "[n]o suit or proceeding shall be maintained . . . until a claim for refund or credit has been *duly filed* with the Secretary, according to the provisions of law in

---

[10] Form 8300 reports certain cash payments received by businesses, while Form 8281 reports income from publicly offered original issue discount (OID) instruments. *See Form 8300 Reference Guide*, INTERNAL REVENUE SERVICE, https://www.irs.gov/businesses/small-businesses-self-employed/irs-form-8300-reference-guide (last visited July 9, 2025); *About Form 8281*, INTERNAL REVENUE SERVICE, https://www.irs.gov/forms-pubs/about-form-8281 (last visited July 9, 2025). Neither of which establish payment of taxes.

that regard, and the regulations of the Secretary established in pursuance thereof." I.R.C. § 7422(a) (emphasis added). For a claim to be duly filed:

> The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts *must be verified by a written declaration that is made under the penalties of perjury.* A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

Treas. Reg. § 301.6402-2(b)(1) (emphasis added). The Federal Circuit noted that an exception to the taxpayer signature requirement may be made only when "a legal representative certifies the claim and attaches evidence of a valid power of attorney." *Brown v. United States*, 22 F.4th 1008, 1012 (2022) (quoting *Gregory v. United States*, 149 Fed. Cl. 719, 723 (2020)). In making this determination, the Circuit relied on language found in Title 26, §§ 6061(a) and 6065. *Id*.

 Section 6061(a) states that "any return . . . or other document required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary." Section 6065 of the U.S. Code, provides that "[e]xcept as otherwise provided by the Secretary, any return . . . or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury." These sections "impose a default rule that individual taxpayers must personally sign and verify their income tax refund claims[,]" and failure to meet these requirements renders the documents invalid and of no legal effect. *Dixon v. United States*, 67 F.4th 1156, 1160 (2023) (quoting *Brown*, 22 F.4th at 1012). A refund suit in which a taxpayer fails to duly file their claim, shall be dismissed "for failure to state a claim upon which relief can be granted[.]" *Brown*, 22 F.4th at 1012 (citing RCFC 12(b)(6)).

 Here, the Harveys provided the Court with copies of their Form 1040, alleging they were filed with the IRS. (Pls.' Exs. at 17–18). However, as the United States points out, this document is devoid of the Harveys' signatures. (*See id.*). Further still, the Harveys have neither alleged nor provided evidence that their claim was signed by a representative operating under a valid power of attorney, in accordance with the exception in *Brown*. (*See* Pls.' Exs.; *Brown*, 22 F.4th at 1012). Thus, Plaintiffs have failed to duly file their claims pursuant to § 7422(a), and their tax refund claim must be dismissed for failure to state a claim upon which relief can be granted. *Brown*, 22 F.4th at 1012–13 (finding dismissal pursuant to RCFC 12(b)(6) proper when the signature and verification requirements were not met).[11]

---

[11] "Under *United States v. Dalm*, . . . [duly] filing is a jurisdictional requirement, while the adequacy of that filing is a claims-processing requirement." *Duke v. United States*, 173 Fed. Cl. 630, 633 (2024) (citing 494 U.S. 596, 609–10 (1990); *Vensure HR, Inc. v. United States*, 119 F.4th 7, 12–16 (Fed. Cir. 2024)). This Court and the Circuit routinely confirm that the signature requirement is statutory and not a standard for assessing filing adequacy. *Brown*, 22 F.4th at

The Court notes that even if it were to find the lack of signatures to be of no consequence, the Harveys' claim would still fail for being filed prematurely with this Court. "Under 26 U.S.C. § 6532 and § 7422(a), a suit may be brought in the [Court of Federal Claims] after an administrative claim has been filed and either the taxpayer *waited six months* before filing suit *or the IRS took final action on the claim*." *Brown*, 22 F.4th at 1010) (emphasis added); *see also Dixon*, 67 F.4th at 1156 ("Just as there are timing requirements for filing refund claims with the IRS, there are both timing and other requirements for filing refund claims in court."). Section 6532(a) specifies that no suit shall begin "before the expiration of [six] months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time." 26 U.S.C. § 6532(a)(1).

The Harveys assert they filed their claim with the IRS utilizing Form 843. (Compl. at 3:18–20). Form 843 is signed and dated December 12, 2024, which is the earliest date that the IRS could have received a validly executed claim from the Harveys. (Pls. Exs. at 5, 15). The Harveys filed this suit on April 29, 2025, approximately four and a half months after filing their claim with the IRS, in violation of the six-month waiting period established by statute. (*See* 26 U.S.C. §§ 6532, 7422(a)). Under these circumstances, the Harveys' premature Complaint deprives this Court of jurisdiction. *See Lofton v. United States*, No. 22-1335C, 2022 WL 17086753, at *2 (Fed. Cl. Nov. 18, 2022) ("The irony is not lost on the Court that this Order of Dismissal is being issued on the precise date that [plaintiff]'s statutory six-month waiting period expires."), *aff'd*, No. 2023-1181, 2023 WL 3881362 (Fed. Cir. June 8, 2023); *see also Thomas v. United States*, 56 Fed. Cl. 112, 120 (2003) (holding the court lacks jurisdiction where the plaintiff filed its claim prematurely under 26 U.S.C. § 6532(a)).

In sum, even if jurisdiction existed, the Court must dismiss the Harveys' claim for a tax refund under RCFC 12(b)(6). The Harveys were required to properly file a tax return and then seek a refund from the IRS before filing in this Court. Furthermore, they failed to observe the required six-month waiting period between submitting their administrative claim and filing suit. The Harveys have not stated a claim upon which relief can be granted.

The Harveys present several other theories upon which they believe they are entitled to compensation, but these claims are not adequately stated and/or fall outside the Court's jurisdiction. (Compl. at 9:21–10:15). First, the Harveys claim that the IRS violated "APA § 555(e) by failing to issue a formal notice of disallowance or agency determination." (*Id.* at 9:26–28). However, "[t]he APA is not a money-mandating statute[,]" and therefore cannot serve as a basis for jurisdiction under the Tucker Act. *Harlem Globetrotters Int'l, Inc. v. United* States, 168 Fed. Cl. 31, 42 (2023); *see also Murphy v. United States*, 993 F.2d 871, 874 ("[T]he Claims Court has no authority to invoke the APA."). Therefore, this claim must fail.

---

1012-13 (citing *Diamond v. United States,* 107 Fed. Cl. 702, 705 (2012); *Selgas v. Commissioner*, 475 F.3d 697, 700–01 (5th Cir. 2007)).

The Harveys also invoke the Takings Clause of the Fifth Amendment, asserting that the IRS's refusal to release the refund allegedly owed to them constitutes an "unlawful deprivation of private property without due process." (Compl. at 10:1–2). Claims for tax refunds and related damages based on alleged takings are rooted in the Federal Government's power to impose taxes, not in the unlawful seizure of private property governed by the Takings Clause. *El v. United States*, 144 Fed. Cl. 741, 753 (2019). While the Federal Government's taxing authority can be viewed as a form of taking, it does not amount to a compensable "taking" under the Fifth Amendment. *U.S. Shoe Corp. v. United States*, 296 F.3d 1378, 1383 (Fed. Cir. 2002), *cert denied*, 538 U.S. 1056 (2003); *see also Skillo v. United States*, 68 Fed. Cl. 734, 743 (2005) (holding that the collection of taxes does not amount to a prohibited Fifth Amendment taking). Therefore, this argument is meritless.

Next, the Harveys raised claims of unjust enrichment, arguing that the IRS "has received value" and "credited their account" by withholding funds for which they are entitled. (Compl. at 18:6–19). The theory of unjust enrichment "assumes the existence of a contract implied in law . . . [and] this court [has] no jurisdiction over such a claim." *Glopak Corp. v. United States*, 12 Cl. Ct. 96, 104 n.6 (1987), *aff'd*, 851 F.2d 334 (Fed. Cir. 1988)) (alterations added); *see also United States v. Mitchell*, 463 U.S. 206, 218 (1983) ("[W]e have held that the [Tucker] Act does not reach claims based on contracts implied in law, as opposed to those implied in fact."); *Martinez v. United States*, 48 Fed. Cl. 851, 864 (2001) ("the claim of unjust enrichment or breach of an implied-in-law contract, is a wholly-equitable action which is clearly outside of this court's jurisdiction."). The Harveys have not alleged the existence of a contract with the United States. Therefore, the Harveys' unjust enrichment claim fails.

The Harveys also seek compensatory damages for emotional and psychological distress, financial hardship and deprivation of liquid assets, imminent loss of their residence, and harm to their credit. (Compl. at 7:7–15, 19:22–20:3, 24:4–9). To the extent the Harveys seek to raise claims based on torts, these also fall outside of this Court's jurisdiction. *Thompson v. United States*, 145 Fed. Cl. 641, 645 (2019) (dismissing litany of claims including intentional fraud, theft, financial losses, misrepresentation, false imprisonment, emotional infliction of mental distress, trespassing to land, trespass to chattel, conversion, and duress) (citing *Haka v. United States*, 107 Fed. Cl. 111, 114 (2012)). The Tucker Act "excludes from the United States Court of Federal Claims jurisdiction claims sounding in tort." *Rick's Mushroom Serv. v. United States*, 521 F.3d 1338, 1343 (2008); *see also Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir. 1993) ("It is well settled that the United States Court of Federal Claims lacks jurisdiction to entertain tort claims."). Furthermore, the Harveys have not supplied any evidence demonstrating that the Government caused their financial difficulties. *Aboo v. United States*, 86 Fed. Cl. 618, 632 (2009) ("[Plaintiff] has put forward no evidence to indicate his financial hardship was the result of the government acting in a wrongful or improper manner."). Because these claims all sound in tort, they must fail.

The Harveys also request that the Court award $500,000 in punitive damages. (Compl. at 24:9–26). Yet again, these demands fall outside of the scope of the Court's jurisdiction. *See Rogers v. United States*, 66 F. App'x 195, 197 (Fed. Cir. 2003) (affirming dismissal for lack of

subject-matter jurisdiction where the plaintiff sought compensatory damages because the Tucker Act precludes claims for "tort damages"); *Woods v. United States*, 122 F. App'x 989, 991 (Fed. Cir. 2004) ("[E]ven if the trial court had jurisdiction over any of [plaintiff's] asserted claims, it would not have had the power to grant punitive damages, as [plaintiff] requested."). Accordingly, for these substantive reasons, the Harveys' Complaint must be dismissed.

One serious ancillary issue also requires attention. During the pendency of briefing on the Motion to Dismiss, and unrelated to the merits of their claims, the Harveys submitted to the Court on August 7, 2025, a filing bearing the title "Motion that Plaintiff Michele West Should Kill Myself Pursuant to Rule 0000."[12] The submission is saturated with profane and reprehensible material, including racial slurs, graphic suggestions of sexual assault, and photographic depictions of self-harm. Such content is not merely inappropriate; it is an affront to the dignity of these proceedings and a blatant abuse of the judicial process. It is also a threat; albeit not a threat directed at the Court, but a threat of violence, nonetheless. Receipt of this scandalous filing necessitated a referral to law enforcement out of concern for the Harveys' safety. There is no proper purpose for such a document, nor do the Harveys attempt to offer one; its only conceivable purpose was to intimidate or coerce the Court towards favorable treatment. The Court will not permit its docket to be weaponized in this matter. Accordingly, the Harveys were ordered to show cause why sanctions should not be imposed. (Order to Show Cause, ECF No. 16).

This Court has authority to sanction based on RCFC 11, which requires attorneys or unrepresented parties to make certain certifications about any documents presented to the court, based on "an inquiry reasonable under the circumstances."[13] RCFC 11(b). In most federal jurisdictions, it is well-settled that federal courts may impose sanctions pursuant to Rule 11 even after dismissal of the merits of the case. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394–98 (1990); *see also Bolivar v. Pocklington*, 975 F.2d 28, 32–33 (1st Cir. 1992) (finding Rule 11 sanctions appropriate when there was "no objectively reasonable inquiry into whether the complaint was warranted under existing law[.]"); *DiPaolo v. Moran*, 407 F.3d 140, 144 (3rd Cir. 2005) ("Rule 11 authorizes sanctions against the signer of any pleading, motion or other paper."); *Bakker  v. Grutman*, 942 F.2d 236, 240 (4th Cir. 1991) (finding that Rule 11 sanctions may be imposed for the filing of frivolous or legally unreasonable papers regardless if such

---

[12] Given the graphic and disturbing nature of the Harveys' filing, the Court initially directed that the document not be filed and therefore available to the public. For purposes of appellate review, and otherwise subject to the orders of the Court or a higher court, the Clerk is **DIRECTED** to file **UNDER SEAL** the Harveys' August 7, 2025 document, with its attached photographic exhibits, contemporaneously with the entry of this Order.

[13] The Rules of the United States Court of Federal Claims (RCFC) closely track the Federal Rules of Civil Procedure (FRCP). *See* RCFC 2002 Rules Committee Note ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."). Because RCFC 11 is substantially identical to Rule 11 of the FRCP, the court relies on precedent interpreting both provisions. *Compare* RCFC 11, *with* FRCP 11.

documents were the result of inexperience, incompetence, or deliberate choice); *American Inmate Paralegal Assoc. v. Cline*, 859 F.2d 59, 62 (8th Cir. 1990) (per curiam), (dismissal of lawsuit pursuant to Rule 11 was appropriate even if the complaint had merit in light of voluminous number of frivolous documents filed with the court), *cert. denied*, 488 U.S. 996 (1988). *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) ("Rule 11's express goal is deterrence: IFP litigants, proceeding at the expense of taxpayers, need to be deterred from filing frivolous lawsuits as much as litigants who can afford to pay their own fees and costs."); *Thomas v. Evans*, 880 F.2d 1235, 1239 (11th Cir. 1989) (a party may be sanctioned under Rule 11 for filing a pleading that has no reasonable legal or factual basis or is filed for an improper purpose.).

Aside from the Court's Rule 11 authority to regulate the conduct of attorneys and parties before it, courts "have the inherent power to control litigation by imposing sanctions appropriate to rectify improper conduct by litigants." *PS Products Inc., v. Panther Trading Co.*, 122 F.4th 893, 898 (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d1311, 1326 (Fed. Cir. 2011) (internal citation and quotation marks omitted). While a preference exists for utilization of Rule 11 sanctions, when "there were no other mechanisms to sanction [a party's] bad faith conduct except the court's inherent power, the … court acted within its discretion by relying on its inherent power to sanction conduct that would typically fall under Rule 11. *PS Products*, 122 F.4th at 900–01. For the reasons set forth below, the Court finds that no other mechanisms— whether under Rule 11 or the Court's inherent powers—are available to sanction the Harveys' gross misconduct except dismissal.

In response to the Court's order to show cause, the Harveys filed a fifteen-page document that does little more than recite arguments made in their previous filings. (Pls.' Resp. to Court's Order, ECF No. 17). Instead of offering <u>any</u> explanation for their disturbing filing, the Harveys simply state that "[s]anctions or dismissal for noncompliance would be disproportionate given Plaintiffs' active cooperation and the substantial legal and factual merits of the claims presented." (*Id.* at 5). Not a single word is responsive to the Court's directive to show cause. The Harveys' response does not demonstrate any awareness of their misconduct, nor indicate any intent to forego the use of inappropriate tactics and scurrilous material in the future. Therefore, pursuant to RCFC 11, or alternatively, the Court's inherent authority, the Court finds that dismissal of their Complaint, as an alternative to the substantive grounds for dismissal discussed previously is warranted.

The Court notes the unusual nature of this sanction. In not quite 21 years of service on three different courts, the Court cannot recall another instance in which it imposed Rule 11 sanctions, or dismissal using its inherent authority, on a pro se litigant. It is a drastic remedy, and one which the Court does not resort to lightly.

In reaching this decision, the Court has also considered the availability of other remedies including an admonition, contempt, therapeutic intervention, and monetary sanctions. None are appropriate. First, the Harveys' recent conduct in failing to meaningfully respond to the Court's directive to show cause indicates an admonition would be ineffectual. In the face of the Court's expressed concern, the Harveys' silence speaks volumes: they simply are unconcerned with the

impropriety of their own conduct. Second, the gravity of a contempt citation requires, in the Court's assessment, an in-person proceeding which would require either travel by the Harveys to Washington D.C. or the Court to their locale. The Harveys are paupers. The cost of travel to the National Courts Building is prohibitive for indigent litigants. Travel by the Court to Minneapolis creates additional taxpayer burden, and at the conclusion of an in-person proceeding, the Court would still be confronted with the same issue: fashioning an appropriate sanction. Third, a court-ordered mental health assessment presents similar logistical issues. The Court is not well-positioned to be aware of appropriate mental health resources in Minneapolis nor is it aware of any resources readily available for compensation for those costs. Finally, the Court has considered imposition of a monetary sanction. The futility of doing so is obvious: if the Harvey's are unable to pay the filing fee for their underlying action, a financial sanction is not only counterintuitive, but it also creates additional future issues should the Harveys prove intransigent.

The Court is unaware of other sanctions for the Harveys' misconduct. Given their failure to articulate even a sliver of remorse or appreciation of the wrongfulness of using such tactics in an ineffectual attempt to influence the Court, some measure must be imposed to not only punish their own conduct but to deter future analogous misconduct by others, even those proceeding pro se. Whether dismissal under these unique circumstanced is couched as an exercise of authority conveyed by RCFC 11 or one which the Court inherently possesses, is largely immaterial.

### Conclusion

For the reasons stated above, the United States' Motion to Dismiss, (ECF No. 6), is **GRANTED**. For purposes of this case the Harveys' Motion for Leave to Proceed *in forma pauperis*, (IFP App., ECF No. 2), is also **GRANTED**.[14] Considering this decision, the Harvey's Motion for Summary Judgment, (ECF No. 8), is **DENIED** as **MOOT.** The Clerk **SHALL** enter judgment accordingly.

As to the Harveys' filing titled "**Motion that Plaintiff Michele West Should Kill Myself Pursuant to Rule 0000**," the Court believes that it should be docketed given its basis as a sanction. However, this filing includes images and messaging inappropriate for this Court. Therefore, the Clerk is **DIRECTED** to **ACCEPT** and **SEAL** this filing.

---

[14] The Harveys purport that they earn approximately $6,500.00 (gross pay/wages) a month, collectively. (IFP App. at 2). They list monthly expenses which when subtracted from their pay leaves them with $1,917.90 monthly, however some of the listed expenses are questionable. (*See id.* (including vehicle repairs and education materials as monthly expenses)).

The Clerk is directed to **REJECT** any future submissions in this case unless they comply with this Court's rules regarding post-dismissal submissions.

**IT IS SO ORDERED.**



_David A. Tapp_
DAVID A. TAPP, Judge